# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS

```
* * * * * * * * * * * * * * * * * * *    *
RICHARD T. DAHL, by his legal            *
guardian, CARRIE BARTH, mother           *    No. 13-98V
                                         *
                    Petitioner,          *    Special Master Christian J. Moran
                                         *
v.                                       *    Filed: November 30, 2018
                                         *
SECRETARY OF HEALTH                      *    Attorneys' fees and costs; attorney
AND HUMAN SERVICES,                      *    hourly rate
                                         *
                    Respondent.          *
* * * * * * * * * * * * * * * * * * *    *
```

<u>Kate G. Westad</u>, Larkin Hoffman, et al. Ltd., Minneapolis, MN, for Petitioner;
<u>Linda S. Renzi</u>, U.S. Dep't of Justice, Washington, DC, for Respondent.

## PUBLISHED DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

 Carrie Barth, as mother and legal guardian of Richard T. Dahl, alleged that an influenza vaccine harmed Mr. Dahl.  She received compensation.  Decision, 2017 WL 1410779 (Fed. Cl. Spec. Mstr. Mar. 24, 2017).

 Ms. Barth filed a motion for an award of attorneys' fees and costs.  The Secretary did not interpose any objection to the amount requested.  Ms. Barth is awarded $144,299.92.

*  *  *

---

[1] The E-Government Act, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services), requires that the Court post this decision on its website.  Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4).  Any redactions ordered by the special master will appear in the document posted on the website.

Originally represented by attorney Sheila Bjorklund, Ms. Barth filed her petition on February 5, 2013, alleging that an influenza vaccination caused Mr. Dahl to suffer from Guillain-Barré syndrome.[2]  In 2013, Ms. Bjorklund was working at a law firm known as Lommen Abdo P.A., and after Ms. Bjorklund's retirement, Ms. Barth's current counsel of record, Kate Westad, succeeded her.

Initially, Ms. Barth presented a report from one of Mr. Dahl's treating doctors, Susan Evans.  Exhibit 21.  Later, Dr. Evans withdrew from participating in the case, and Ms. Barth retained a second expert, Justin Willer, who wrote two reports.  Exhibits 25 and 34.  By the time Ms. Barth was retaining Dr. Willer, Ms. Westad had changed law firms and had begun working at a different law firm, Larkin Hoffman.

When the process for submitting expert reports concluded, the parties proposed dates for a hearing.  But, before the hearing, the parties retained an outside mediator who assisted with reaching a tentative agreement.  The process for going from tentative agreement to stipulation, however, took longer than typical as the parties needed to investigate to whom a settlement check could be written.  Eventually, the parties submitted a stipulation that was incorporated by a decision.  Decision, 2017 WL 1410779 (March 24, 2017).

After receiving additional time to file her motion, on January 26, 2018, Ms. Barth filed a motion for an award of attorneys' fees and costs.  The motion seeks a total of $163,738.42.  Components of this request include:

| Lommen | |
|---|---|
| Attorneys' Fees | $76,932.50 |
| Attorneys' Costs | $30,666.01 |
| Larkin | |
| Attorneys' Fees | $42,341.00 |
| Attorneys' Cost | $7,539.13 |
| Larkin – Conservatorship | |
| Attorneys' Fees | $4,732.00 |

---

[2] Technically, the original petitioner was Mr. Dahl.  However, later events revealed that this designation was not correct as Ms. Barth was Mr. Dahl's guardian when the petition was filed.

| Attorneys' Costs | $5.00 |
|---|---|
| Petitioner's Costs | $1,522.78 |

The Secretary filed a response to Ms. Barth's motion.  The Secretary represented that he "is satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case."  Resp't's Resp., filed Jan. 31, 2018, at 2.  With respect to amount, the Secretary recommended "that the special master exercise his discretion" when determining a reasonable award for attorneys' fees and costs.  Id. at 3.

After the undersigned began reviewing Ms. Barth's submissions consistent with McIntosh v. Sec'y of Health & Human Servs., 139 Fed. Cl. 238 (2018), the undersigned ordered Ms. Barth to justify the proposed hourly rates.  Order, issued June 25, 2018.  Ms. Barth did so on August 22, 2018, by submitting her affidavit and affidavits from three other attorneys.  The Secretary did not address Ms. Barth's submission of new material.

This matter is now ripe for adjudication.

\*       \*       \*

Because Ms. Barth received compensation, she is entitled to an award of reasonable attorneys' fees and costs.  42 U.S.C. § 300aa–15(e).  Thus, the unresolved question is what is a reasonable amount of attorneys' fees and costs?

## I.      Attorneys' Fees

The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act.  This is a two-step process.  Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1348 (Fed. Cir. 2008).  First, a court determines an "initial estimate … by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'"  Id. at 1347-48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)).  Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings.  Id. at 1348.  Here, because the lodestar process yields a reasonable result, no additional adjustments are required.  Instead, the analysis focuses on the elements of the lodestar formula, a reasonable hourly rate and a reasonable number of hours.

A.    Reasonable Hourly Rate

Under the Vaccine Act, special masters, in general, should use the forum (District of Columbia) rate in the lodestar calculation.  Avera, 515 F.3d at 1349. There is, however, an exception (the so-called Davis County exception) to this general rule when the bulk of the work is done outside the District of Columbia and the attorneys' rates are substantially lower.  Id. 1349 (citing Davis Cty. Solid Waste Mgmt. and Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency, 169 F.3d 755, 758 (D.C. Cir. 1999)).  In this case, all the attorneys' work was done outside of the District of Columbia.

Thus, under Avera, the determination of an attorney's hourly rate is a three-step process.  "First, the hourly rate in the attorneys' local area must be established. Second, the hourly rate for attorneys in Washington, DC must be established. Third, these two rates must be compared to determine whether there is a very significant difference in compensation."  Masias v. Sec'y of Health & Human Servs., No. 99-697V, 2009 WL 1838979, at *4 (Fed. Cl. Spec. Mstr. June 12, 2009) (citing Avera, 515.3d at 1353 (Rader, J. concurring)), mot. for rev. den'd, (slip op. Dec. 10, 2009), aff'd, 634 F.3d 1283 (Fed. Cir. 2011), corrected, 2013 WL 680760 (Fed. Cl. Spec. Mstr. Jan. 30, 2013).

The two firms that represented Ms. Barth are analyzed separately.

   1.    *Lommen Abdo*

For Lommen Abdo, Ms. Barth requests compensation for the following professionals.

| Person | Requested Rate | Awarded Rate |
|---|---|---|
| Sheila Bjorklund 2012 through March 2014 | $350 | $320 |
| Karen A. Schlotthauer (KAS) | $300 | $275 |
| Kate Westad from April 2014 through June 2015 | $275 | $250 |
| Kate Westad from July 2015 through March 2016 | $350 | $260 |

4

| Paralegals (six identified by initials) | $125 | $125 |
|---|---|---|

## Ms. Bjorklund

Ms. Barth provided relatively little information to justify the proposed rate ($350 per hour) for Ms. Bjorklund's work performed from 2012 to 2014.  Based upon an affidavit Ms. Bjorklund provided in 2009, a special master previously determined that $275 per hour was a reasonable hourly rate of compensation for Ms. Bjorklund's work performed in 2007.  Cedillo v. Sec'y of Health & Human Servs., No. 98-916V, 2010 WL 4853342, at *5 (Fed. Cl. Nov. 8, 2010).  The inflation calculator from the Bureau of Labor Statistics indicates that $275 in January 2007 is approximately $320 in June 2013.[3]  The rate awarded ($320 per hour) is approximately 86 percent of the rate requested ($350 per hour).

## Karen A. Schlotthauer (KAS)[4]

To maintain parity with Ms. Bjorklund's rate, Ms. Schlotthauer will be compensated at a rate of $275 per hour.

## Ms. Westad

Ms. Westad was admitted to the bar in May 2003.  She began working on cases in the Vaccine Program in 2012.  When she started working on this case in April 2014, she had nearly 11 years of general experience, and two years of experience specifically in the Vaccine Program.

For work performed at Lommen Abdo, Ms. Westad seeks compensation at two different rates.  From April 2014 through June 2015, the proposed rate is $275

---

[3] The calculator is available at https://www.bls.gov/data/inflation_calculator.htm

[4] KAS appears to be Karen A. Schlotthauer (http://www.fmjlaw.com/trusts-estates-karen-schlotthauer/).  Ms. Barth did not submit any evidence in support of Ms. Schlotthauer's hourly rate.  However, Ms. Schlotthauer performed relatively few hours.  Thus, any changes to Ms. Schlotthauer's hourly rate are unlikely to affect the outcome significantly.

per hour.  From July 2015 through March 2016, however, the proposed rate is $350 per hour.  Ms. Westad did not explain why her rate increased by slightly more than 25 percent, an amount that considerably exceeds the rate of inflation.

To support the proposed rate increase, Ms. Barth cited a few vaccine cases where Ms. Westad was awarded a $350 per hour rate.  Westad's Aff., filed Aug. 22, 2018, at 4.  As noted in the June 25, 2018 order, however, the undersigned does not find these cases useful in establishing Ms. Westad's rate.  Specifically, these cases are not useful because in Fontana, No. 16-1290V, the special master found Ms. Westad's rate to be reasonable only by citing Rus, No. 12-631V.  Rus, in turn, cited Marsyla, No. 15-1172V, and Larson, No. 15-1077V.  Marsyla and Larson did not analyze Ms. Westad's hourly rate explicitly.  Ms. Barth cited one other vaccine case, Bakken, No. 16-1283V, but this case did not analyze Ms. Westad's hourly rate explicitly either.

Ms. Barth also cited (but did not provide) a "straight forward underinsured motorist case" in Minnesota where the plaintiff attorneys were awarded $400 per hour.  Westad Aff., filed. Aug. 22, 2018, at 5-6 (citing Wilbur v. State Farm Mut. Auto. Ins. Co., 880 N.W.2d 874 (Minn. Ct. App. 2016).  While the undersigned was unable to access the fees decision cited by Ms. Barth, the merits of the Wilbur case seem complex in that a jury trial was conducted on the personal injury damages and then a separate bench trial was conducted on a statutory interpretation question, a matter of first impression, that was ultimately decided by the Minnesota Supreme Court.  Wilbur v. State Farm Mut. Auto. Ins. Co., 892 N.W.2d 521, 523 (Minn. 2017).  Suffice to say that the merits of the Wilbur case do not appear to be straight forward and, thus, do not appear to be a good comparative case for vaccine cases.

In light of the sparse information Ms. Barth has presented, the undersigned will attempt to fashion a reasonable rate for Ms. Westad.  A foundation is Ms. Bjorklund's hourly rate.  To maintain rough parity with Ms. Bjorklund, Ms. Westad's work from April 2014 through June 2015 will be compensated at $250 per hour.

For the next period, July 2015 through March 2016, Ms. Westad maintains that her hourly rate should rise by approximately 25 percent.  The inflation calculator indicates that from April 2014 (the earliest date) to March 2016 (the latest date) $250 grows to $251.12.  This is essentially no change.

Special masters recognize that with the passage of time, an attorney may increase in experience, and this advanced experience leads to improved efficiency, and this heightened efficiency warrants a higher hourly rate. <u>Broekelschen v. Sec'y of Health & Human Servs.</u>, 102 Fed. Cl. 719, 733 (2011) (noting that an experienced attorney who charges a relatively high hourly rate may be expected to perform some tasks in less time than inexperienced attorneys with lower hourly rates). However, Ms. Westad's time entries do not suggest that her efficiency increased as the amount of time she spent on tasks appears to be toward the high end of reasonable.[5] Without some basis for finding that the passage of time correlates to more advanced skills from the attorney, there is no reason to raise an attorney's hourly rate significantly. Moreover, while Ms. Westad represents her clients well, her work did not display an exceptional level of skill such that an improved performance should be presumed. Consequently, the undersigned finds that a reasonable hourly rate for work Ms. Westad performed from July 2015 through March 2016 is $260 per hour.

**Paralegals**

Although the timesheets from Lommen Abdo identify the paralegals by initial, Ms. Barth did not further provide any information about them. For example, Ms. Barth did not communicate how many years of experience the paralegals have.

---

[5] Ms. Westad's time entries do not contain sufficient information to demonstrate that she worked more efficiently (quickly). For example, on April 24, 2015, the entry indicates that Ms. Westad spent 3.8 hours (nearly a half day) on this task: "receive and review information from expert; medical literature research."

The brevity of Ms. Westad's entry raises multiple questions. What material did the expert send to Ms. Westad? How many pages was this material? How long did Ms. Westad take to review the material from the expert? What research did Ms. Westad perform? What sources did Ms. Westad consult? What topic was Ms. Westad researching? Why was Ms. Westad --- and not the expert --- performing medical literature research? While, under some circumstances, attorneys might research medical topics more efficiently than doctors, Ms. Westad's invoice does not provide sufficient information to determine that those circumstances are present here.

The undersigned will extend the benefit of the doubt to Ms. Barth and find, based upon experience in evaluating requests for attorneys' fees and costs, that the proposed rates for the paralegals are reasonable.  Nevertheless, counsel is encouraged to make a more detailed presentation for a special master to assess the proposed rates with a meaningful amount of review.  See Floyd v. Sec'y of Health & Human Servs., No. 13-556V, 2017 WL 1344623, at *3-4 (Fed. Cl. Spec. Mstr. Mar. 2, 2017).

Overall, the reductions to the hourly rates for the attorneys employed at Lommen Abdo result in a parallel reduction to the overall amount requested in attorneys' fees equaling $8,452.60.[6]

>        2.    *Larkin Hoffman*

>             a)    Step 1: Determining a Reasonable Local Hourly Rate

Having found a reasonable hourly rate for Ms. Westad's tenure at Lommen Abdo, the undersigned next considers what is a reasonable hourly rate for Ms. Westad's work at Larkin Hoffman.  Ms. Westad changed firms between March and April 2016.

Ms. Barth has proposed that Ms. Westad be compensated at the same rate at both firms – $350 per hour, although the rate Ms. Barth proposes is higher than the rate the undersigned has found for Lommen Abdo.  Retaining the same hourly rate seems justified as the simple act of changing law firms would not necessarily mean that the attorney warrants an increased hourly rate.  If this logic were followed, then a reasonable hourly rate for Ms. Westad's work at Larkin Hoffman would remain at $260 per hour with some adjustments for inflation.

However, unlike the situation with the foundational determination of Ms. Bjorklund's hourly rate for which Ms. Barth provided no direct support, for Ms. Westad's hourly rate at Larkin Hoffman, Ms. Barth submitted some evidence to support an hourly rate of $350 per hour.  Some evidence regarding hourly rates

_____

[6] Because Ms. Barth did not submit any significant evidence regarding the reasonableness of proposed hourly rates at Lommen Abdo and because Ms. Barth did not present any argument that the attorneys at Lommen Abdo are entitled to be compensated at forum rates, the undersigned declines to conduct the more complicated Avera analysis.  See Vaccine Rule 8(f).

previously awarded to Ms. Westad have been addressed above.  Other evidence consists of Ms. Westad's affidavit plus affidavits from three other attorneys, each of whom assert that $350 per hour is a reasonable rate of compensation for an attorney with Ms. Westad's experience in personal injury law.

Although somewhat helpful, these affidavits ultimately cannot be accepted in whole.  The affiants state that they represented people who seek compensation for injuries, and that their usual rate of compensation is a particular dollar per hour.  However, the affiants do not explain how their rate of compensation is determined.  Personal injury attorneys typically represent people on a contingent basis, and the affidavits do not explain how the hourly rate has been set.  The contingent nature of personal injury litigation may create situations in which one case leads to a large recovery for the plaintiff with a correspondingly large fee for the attorney.  But, on another case, the attorney may spend many hours on a case in which the attorney and the plaintiff receive no compensation.  In professing what their hourly rate is, the affiants do not explain the methodology that they used.  The discrepancies between contingent fee billing and hourly billing appears to be one reason a judge from the Court of Federal Claims rejected personal injury as a suitable comparator for setting an hourly rate for attorneys in the Vaccine Program.  Rupert v. Sec'y of Health & Human Servs., 55 Fed. Cl. 293, 304-05 (2003).

Furthermore, the affiants – except for Ms. Westad herself – seem to have little familiarity with the Vaccine Program.  Some experience with the Vaccine Program would ground the affiant's opinions as to the reasonableness of proposed rates.  Knowledgeable attorneys would begin their opinions about reasonable rates with the Federal Circuit's statement that litigation in the Vaccine Program is not complex.  Rodriguez v. Sec'y of Health & Human Servs., 632 F.3d 1381, 1385 (Fed. Cir. 2011).  A primary reason for the relative simplicity of the Vaccine Program is the role of special masters.  Special masters simplify an attorney's work in multiple ways.  The Office of Special Masters has issued a detailed set of Guidelines that explain basic procedure for each step in a case in the Vaccine Program.  Unlike judges in traditional litigation, special masters play an inquisitorial role, assisting the parties in developing their cases.  Also, special masters have accumulated expertise, making presentations to them as finders of fact less complicated than a presentation to a juror.  Other factors that contribute to the lack of complexity for legal skills include the no-fault nature of the Vaccine Program in which petitioners are not required to establish negligence, and the lack of adversarial discovery.  The affiants have not indicated that they considered the

differences between litigation of traditional personal injury cases and litigation in the Vaccine Program.[7]

However, as suggested previously, the affidavits carry some value. The affidavits provide some evidentiary basis for increasing Ms. Westad's hourly rate to $300 per hour, starting when she changed firms.[8]  The increase from $260 per hour to $300 constitutes an increase of slightly more than 15 percent.

The undersigned recognizes that the findings regarding a reasonable hourly rate at both Lommen Abdo and Larkin Hoffman are approximations.  The need for estimates derives, initially, from the lack of persuasive evidence concerning the reasonableness of the proposed rates for the attorneys from Lommen Abdo.  The Secretary's lack of participation in the process of determining attorneys' fees is a problem, too.  But, the Secretary is not responsible for gaps in Ms. Barth's presentation.  The fee applicant bears the burden of producing satisfactory evidence.  Raney v. Federal Bureau of Prisons, 222 F.3d 927, 938 (Fed. Cir. 2000).

The undersigned further recognizes that the process of estimating could have produced other reasonable results.  For example, a different index for inflation could have produced a higher or a lower hourly rate.  But, the selection of one reputable index does not make the choice arbitrary.  As the Supreme Court has explained, trial courts do not have to achieve "auditing perfection."  Fox v. Vice, 563 U.S. 836, 838 (2011) (indicating that trial courts may use "rough justice" in awarding attorneys' fees).

### 3.   Step 2: Determining a Reasonable Hourly Rate for Forum

Compared to the process of finding a reasonable hourly rate for the location (Minneapolis), where Ms. Barth's attorneys practice, the process for finding a reasonable hourly rate for the forum of this litigation (Washington, DC) has a more

---

[7] While the litigation in the Vaccine Program is not as complex as in traditional litigation, the underlying medicine is complicated.

[8] The change in firms seems to be a reasonable point of differentiation as the affiants do not particularly state that their assessment of a reasonable hourly rate extends to her former firm.

firm starting point.[9]  After the Federal Circuit directed the special masters to compensate attorneys at rates prevailing in the forum (except for the <u>Davis County</u> rule, which is discussed below), special masters established reasonable hourly rates for Vaccine Program work in Washington, D.C.  <u>See Masias</u>, 2009 WL 1838979, at *24–25; <u>Rodriguez v. Sec'y of Health & Human Servs.</u>, No. 06-559V, 2009 WL 2568468, at *15 (Fed. Cl. Spec. Mstr. July 27, 2009), <u>mot. for rev. denied</u>, 91 Fed. Cl. 453 (2010), <u>aff'd</u>, 632 F.3d 1381 (Fed. Cir. 2011).

After these decisions had aged, a special master used them as one factor in finding updated hourly rates for Washington, D.C.  <u>McCulloch v. Sec'y of Health & Human Servs.</u>, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).  <u>McCulloch</u> innovated an approach of grouping attorneys into tiers based upon years of experience and found reasonable rates for attorneys within particular tiers.  For example, the special master found, in 2015, that an attorney with 11 to 19 years of experience could reasonably charge $300 to $375 per hour.  <u>Id.</u> at *19. Other special masters have followed <u>McCulloch</u>.

In 2016, Ms. Westad, who was admitted to the bar in 2003, had 13 years of experience as an attorney and approximately four years of experience in the Vaccine Program.  Thus, a reasonable hourly rate for a Washington, D.C.-based Vaccine Program attorney with Ms. Westad's experience and skills is $325 per hour.[10]

---

[9] The undersigned recognizes that the analysis of forum rate for Larkin Hoffman is not present in the determination of hourly rates for Lommen Abdo. Part of the reason for including the forum rate for Larkin Hoffman here stems from the more robust evidence that Ms. Barth filed.  While Ms. Barth did not make any arguments that Ms. Westad should be compensated at a rate prevailing in the forum — an omission that could constitute a waiver of this argument, the undersigned is also aware that Ms. Westad continues to work at Larkin Hoffman. Thus, this decision may have persuasive value for her work in future cases.

[10] In requesting $350 per hour, Ms. Westad is implicitly suggesting that her rate of compensation should be within 10 percent of the upper bound to the range of attorneys with 11 to 19 years of experience.  However, in 2016, Ms. Westad was much closer in years of experience to the lower bound, and she also did not display the skills or acumen that suggests she should jump to close to the top of the range.

4.     *Step 3: Determining Whether the Rates Are Significantly Different*

The final step is comparing Ms. Westad's local rate for 2016 ($300 per hour) to a reasonable forum rate for 2016 ($325 per hour). To calculate the difference between the forum rate and the local rate, special masters have used this formula:

((forum rate / local rate) – 1) * 100.

Here, the result of this formula is 8.3 percent.

Whether a particular difference is "significant" is a matter of discretion for special masters. Hall v. Sec'y of Health & Human Servs., 640 F.3d 1351, 1356-57 (Fed. Cir. 2011). Neither party presented arguments about the substantiality of a difference of 8.3 percent. In the absence of informative briefing and in the context of setting an hourly rate for an attorney pursuant to a fee-shifting statute, the undersigned finds that 8.3 percent is not a very significant difference.

Accordingly, for the years beginning in 2016, Ms. Westad is compensated at a rate prevailing in the forum, which is $325 per hour.[11]

B.     Reasonable Number of Hours

The second factor in the lodestar formula is a reasonable number of hours. Reasonable hours are not excessive, redundant, or otherwise unnecessary. See Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993). The Secretary also did not directly challenge any of the requested hours as unreasonable. In light of the Secretary's lack of objection, the undersigned has reviewed the fee application for its reasonableness. See McIntosh, 139 Fed. Cl. 238.

---

[11] If the forum rate were the rate Ms. Westad proposed ($350 per hour), then the difference between the forum rate and the local rate would be 16.7 percent. The undersigned probably would have found this difference to be significant, and compensated Ms. Westad at her local rate, $300 per hour. So, the finding that Ms. Westad's forum rate is $325 per hour actually increases the rate at which Ms. Westad is compensated.

12

**Lommen Abdo**

The entries from the attorneys and paralegal generally describe the activities with sufficient detail that the reasonableness of the work may be assessed.[12]  Most, but not all, activities were reasonable.

For attorneys, excessive and/or poorly defined entries include: conducting medical research, and spending one hour in reviewing a single article on diabetic neuropathies.  In addition, attorney Schlotthauer spent most time addressing guardianship issues, such as preparing a power of attorney.  Because Mr. Dahl was disabled before he was vaccinated, this type of work appears separate from the work on the petition in the Vaccine Program.  Thus, this work is not compensated here.

Paralegals sometimes performed work that is secretarial in nature and should not be billed at all.  Examples include: organizing records into binders, updating indices, preparing compact discs for mailing, creating an exhibit list, preparing routine notices of filing, and calendaring deadlines.

In total, approximately $3,000 was excessive, not fully explained, and/or unreasonable.  Thus, this much is reduced from the charges sought by Lommen Abdo.

**Larkin Hoffman**

The entries for professionals at Larkin Hoffman are similar to those from Lommen Abdo.  Again, most, but not all, of the activities are reasonable.

The tasks for which the billing is not appropriate are primarily clerical duties for which a paralegal has performed.  Examples include filing documents and printing documents.  An estimate to account for these types of improperly billed activities is $2,000.

---

[12] The paralegals sometimes combined requests for medical records from multiple providers into one entry with a great amount of detail and sometimes the one entry lacked detail.  Compare entry for Feb. 5, 2013 with entry for Jan. 22, 2014.

**Larkin Hoffman – Conservatorship**

Ms. Barth separately requests reimbursement for work a different attorney from Larkin Hoffman, M. L. Hagstrum Bayne, for work in establishing her as conservator for Mr. Dahl. Although Ms. Barth had explored alternatives to being the conservator, the parties ultimately determined that Ms. Barth needed to be the conservator to receive the settlement funds. Ms. Hagstrum Bayne's invoices are well-explained and her activities are reasonable. Ms. Barth is awarded the full amount requested, $4,737.00, which includes $5.00 in costs.

**Larkin Hoffman – Fees for Fees**

On October 16, 2018, Ms. Barth amended her motion for fees to add additional charges for developing the evidence for Ms. Westad's hourly rate. The amount requested is $4,840.00.

A reasonable amount is $4,355.00. The decrease stems from the change in the hourly rate for Ms. Westad to $325 per hour (not $350 per hour), and a deduction because the paralegal performed secretarial work.

**Summary for Attorneys' Fees**

The following amounts are reasonable attorneys' fees:

| | |
|---|---|
| For Lommen Abdo: | $65,480.00 |
| For Larkin Hoffman: | $40,341.00 |
| For Larkin Hoffman conservatorship: | $4,732.00 |
| For Larkin Hoffman fees for fees: | $4,355.00. |

## II.  Costs

In addition to seeking an award for attorneys' fees, Ms. Barth seeks compensation for costs expended. Again, the analysis is separated for the two different firms.

### Lommen Abdo

For costs Lommen Abdo incurred, Ms. Barth seeks a total of $30,666.01. The costs of $7,325.01, for routine items such as medical records, the filing fee,

and medical articles are reasonable and adequately documented.  Ms. Barth is awarded them in full.

The balance ($23,341.00) is for the work of two experts, Dr. Susan Evans ($3,086.00) and Dr. Willer ($20,255.00).

For Dr. Evans, the documentation is not sufficient to award the amount requested.  The invoices do not directly supply an hourly rate but the implied rate (see Pet'r's Mot., exhibit B at 38, found at pdf 63) exceeds what is usually paid for the experts with the strongest credentials and the most experience in the Vaccine Program.  Other invoices do not include the amount of time spent.  For these reasons, the amount awarded to Dr. Evans is reduced to $2,000.00.

For Dr. Willer, the documentation is also not sufficient.[13]  First, Dr. Willer requests compensation at a rate of $500 per hour.  Although Dr. Willer has good qualifications (see exhibit 25), he lacks some qualifications, such as an academic appointment to a premier medical school, that distinguishes the highest paid experts.  In addition, Dr. Willer does not have experience testifying in the Vaccine Program.  Thus, Ms. Barth has not demonstrated that Dr. Willer deserves compensation at the highest tier for experts.

More importantly, there is a significant problem with the invoices that Dr. Willer prepared.  The problems begin at the onset as the law firm wrote a check as a retainer fee (see Pet'r's Mot., exhibit B at 87-88, found at pdf 112-13) but Dr. Willer's invoice for the work is not readily apparent.  It appears that $5,000 is paid but not accounted for.  The next two invoices are for successive dates (see Pet'r's Mot., exhibit B at 90, 97, found at pdf 115, 122), but the work is so vaguely described, it is difficult to tell if different work was performed.  The fourth invoice (see Pet'r's Mot., exhibit B at 96, found at pdf 121), contains a single line entry for 15 hours.  This generalized billing is not appropriate as experts are expected to list the amount of time they spent on particular activities.  See Caves v. Sec'y of Health & Human Servs., 111 Fed. Cl. 774, 781-83 (2013); Morse v. Sec'y of Health & Human Servs., 89 Fed. Cl. 683 (2009).  The lack of detail in the fourth invoice is more glaring because the fifth invoice contains much better, although still lacking some detailed, information.  Pet'r's Mot., exhibit B at 98, found at pdf

---

[13] Given that Ms. Barth retained Dr. Willer through National Medical Consultants, P.C., the lack of supporting information is surprising.

123.  To account for the reduction of Dr. Willer's hourly rate and these billing problems, Ms. Barth is awarded $12,000.00 for work Dr. Willer performed.

For these reasons, Ms. Barth is awarded $21,325.01 in costs Lommen incurred.

### Larkin Hoffman

At Larkin Hoffman, Ms. Barth continued to incur expenses.  She requests reimbursement of $7,539.13.  The most significant item is a fee for a mediation, $5,035.65, which is reasonable.

The remaining items are primarily associated with Ms. Westad's travel for the mediation.  Most of these expenses are reasonable.  Two items not reasonable are the flight at discounted first class and the hotel.  Exhibit D at 13, 15.  The sum of $500 is removed to account for these items.  The remaining items are acceptable.  A reasonable amount of costs for Larkin Hoffman is $7,039.13.

### Ms. Barth's costs

Ms. Barth requests reimbursement for personally incurred costs of $1,522.78.  Pet'r's Mot., exhibit G, found at pdf 169-70.  Like Ms. Westad's travel for the mediation, a portion of the costs of travel is not reasonable and the airfare is not well documented.  The sum of $500 is removed to account for these items.

*       *       *

The Vaccine Act permits an award of reasonable attorneys' fees and costs. §15(e).  The undersigned finds $144,299.92 ($114,908.00 in fees and $29,391.92 in costs) to be a reasonable amount for all attorneys' fees and costs incurred.  The undersigned GRANTS the petitioner's motion and awards $144,299.92 in attorneys' fees and costs.  This shall be paid as follows:

**A lump sum of $86,805.01 in the form of a check made payable to petitioner and Lommen, Abdo, P.A. for a portion of attorneys' fees and costs available under 42 U.S.C. § 300aa-15(e);**

**A lump sum of $56,472.13 in the form of a check made payable to petitioner and Larkin Hoffman for a portion of attorneys' fees and costs available under 42 U.S.C. § 300aa-15(e); and**

16

**A lump sum of $1,022.78 in the form of a check made payable to petitioner.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[14]

**IT IS SO ORDERED**.

s/Christian J. Moran
Christian J. Moran
Special Master

---

[14] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.